UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| AND | ) | |
| STATE OF INDIANA, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No.  2:22-cv-48 |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC, | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General

of the United States and through its undersigned attorneys, acting at the request of and on behalf

of the Administrator of the United States Environmental Protection Agency ("EPA"), and the

State of Indiana (the "State"), through its undersigned attorneys, acting at the request of and on

behalf of the Commissioner of the Indiana Department of Environmental Management

("IDEM"), file this Complaint and allege as follows:

## STATEMENT OF THE CASE

1.      This is a civil action for recovery of costs and performance of work under

Sections 106 and 107 of the Comprehensive Environmental Response, Compensation and

Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of

1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) ("CERCLA"), 42 U.S.C. §§ 9606 and 9607, and

Ind. Code §§ 13-25-4-9, 13-25-4-10, and 13-25-4-8, against Northern Indiana Public Service

Company ("Defendant").

2.      The United States and the State seek, pursuant to Section 107(a) of CERCLA,

42 U.S.C. § 9607(a) and Ind. Code § 13-25-4-10, recovery of unreimbursed response costs

incurred by them for activities undertaken in response to the release or threatened release of

hazardous substances at the Town of Pines Superfund Site, in Porter County, Indiana (the "Site").

3.      The United States and the State also seek, pursuant to Section 106 of CERCLA,

42 U.S.C. § 9606 and Ind. Code § 13-25-4-9, injunctive relief requiring Defendant to take action

to abate a release of hazardous substances or threat of release of hazardous substances at the

second operable unit ("OU 2") at the Site that may pose an imminent and substantial

endangerment to the public health or welfare or the environment.

4.      In addition, the United States and the State seek a declaratory judgment, pursuant

to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Ind. Code §§ 13-25-4-8(a),

declaring that Defendant is liable for any future response costs that the United States may incur

in connection with any subsequent action or actions that may be performed pertaining to OU 2.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to

CERCLA Sections 106(a), 107(a) and 113(b), 42 U.S.C. §§ 9606(a), 9607(a) and 9613(b), and

pursuant to 28 U.S.C. §§ 1331, 1345, and 2201. Pursuant to 28 U.S.C. § 1367, this Court has

supplemental jurisdiction over the State's claims under Ind. Code §§ 13-25-4-9 and 13-25-4-10.

6.      Venue is proper in this district pursuant to CERCLA Sections 106(a) and 113(b),

42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b) and (c) because the events giving

rise to this claim occurred in this district and because the Site is located in this district.

**DEFENDANT**

7.      Defendant is an Indiana limited liability company, headquartered in Merriville, Indiana, that at times relevant to this complaint produced and distributed electricity in Northern Indiana. Defendant arranged for disposal or treatment of hazardous substances and/or arranged with a transporter for transport for disposal or treatment, of hazardous substances it owned or possessed, at locations within the Site that were owned or possessed by another party or entity.

8.      Defendant is a "person" within the meaning of CERCLA Sections 101(21) and 107, 42 U.S.C. §§ 9601(21) and 9607, and Ind. Code §§ 13-25-4-9, 13-25-4-10, and 13-25-4-8(a).

**STATUTORY BACKGROUND**

9.      CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

10.      Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat,…

11.      Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section —

*      *      *

(3)     any person who by contract, agreement, or otherwise
        arranged for disposal or treatment, or arranged with a
        transporter for transport for disposal or treatment, of
        hazardous substances owned or possessed by such person,
        by any other party or entity, at any facility or incineration
        vessel owned or operated by another party or entity and
        containing such hazardous substances, and

*       *       *

shall be liable for —

(A)     all costs of removal or remedial action incurred by
        the United States Government or a State...not
        inconsistent with the national contingency plan . . . .

12.     Under Ind. Code § 13-25-4-8(a), "a person that is liable under Section 107(a) of

CERCLA (42 U.S.C. § 9607(a)) for: (1) the costs of removal or remedial action incurred by the

commissioner consistent with the national contingency plan . . . is liable, in the same manner and

to the same extent, to the state under this section."

## SITE DESCRIPTION

13.     The Site is located in the Town of Pines, Indiana, or within an area known as the

Area of Investigation, as depicted on the map attached as Attachment 1, where coal ash, also

known as coal combustion residuals ("CCRs"), may have or have been deposited, often as fill,

and areas of groundwater contaminated by such CCRs. The Site includes an unlined landfill

containing primarily coal ash ("Yard 520") and all other locations where hazardous substances

from the CCRs have or may have come to be located. The Site has been identified by other

names, including Town of Pines Groundwater Plume Site and Town of Pines Groundwater

Contamination Site.

14.     On September 28, 2021, EPA divided the Site into two portions, or operable units,

for purposes of cleanup.

15.     The first portion, Operable Unit 1" ("OU 1") consists of those portions of the Site where contamination of groundwater from the disposal of CCRs at Yard 520 have or may have come to be located, as generally depicted within the orange or green-colored boundary lines set forth in Attachment 1. Work associated with CCR contamination at OU 1 includes, but is not limited to groundwater and residential drinking water well monitoring north and east of the north area of Yard 520 and west of the main branch of Brown Ditch.

16.     The second portion, Operable Unit 2 ("OU 2"), addresses contamination of soil, groundwater, and drinking water wells from the disposal of CCRs at portions of the Site. OU 2 consists of the following three parts as set forth below.

a.     First, OU 2 addresses water, specifically:  (a) groundwater monitoring in the areas north of the East Branch of Brown Ditch and east of the Main Branch of Brown Ditch; (b) surface water and sediments of the East Branch of Brown Ditch, and (c) residential drinking water wells in the area north of the East Branch of Brown Ditch and east of the Main Branch of Brown Ditch. These areas are generally depicted inside the purple-colored boundaries set forth in Attachment 1.

b.     Second, OU 2 addresses soil sampling and excavation in the areas generally depicted to be within the brown-colored boundaries set forth in Attachment 1.

c.     Third, OU 2 addresses land use restrictions, specifically the use of best efforts to work with local officials to implement a local ordinance or equivalent restriction that prohibits the use or installation of private drinking water wells in the area of the Municipal Water Service Extension, as constructed under two administrative orders on consent, executed in 2003 and 2004, and described in Paragraphs 23 and 24, below.

17.     The Site is a Superfund Alternative Approach ("SAA") agreement site (see

https://www.epa.gov/enforcement/superfund-alternative-approach). A Site with an SAA

agreement is eligible for, but is not listed on, the National Priorities List ("NPL").

18.     The Site is a "facility" within the meaning and scope of Sections 101(9) and

107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a) and Ind. Code § 13-11-2-77(f).

### EPA RESPONSE ACTIONS AT THE SITE

19.     In 2003, in response to sampling of drinking water wells showing elevated levels

of boron and molybdenum exceeding Removal Action Levels (RALs), EPA entered into an

Administrative Order on Consent ("AOC I") with Defendant and three other potentially

responsible parties to extend municipal water service from nearby Michigan City, Indiana, to

businesses and residences in areas within and near the Town of Pines. The parties to AOC I

amended the agreement in 2004 to include additional properties. RALs are chemical-specific

concentrations for individual contaminants in tap water, air, and soil developed by EPA that may

be used to support the decision for EPA to undertake a removal action.

20.     On April 5, 2004, EPA, Defendant, and the three additional potentially

responsible parties also entered into a second Administrative Order on Consent ("AOC II"). AOC

II required the PRPs to conduct a Remedial Investigation and Feasibility Study to determine the

nature and extent of the contamination at the Site and whether additional cleanup measures were

needed to protect human health and the environment from exposures to coal ash-derived

contamination.

21.     Defendant and the other three potentially responsible parties completed a

Remedial Investigation Report, which EPA approved subject to conditions on May 28, 2010.

22.     Beginning in 2014, Defendant conducted additional sampling at OU 2, finding

elevated levels of thallium, arsenic, and lead at the Site, not previously detected. On October 15,

2015, EPA determined that the presence of elevated levels of these metals in the soils at

residential yards and a city park at the Site, and potential exposure pathways of those metals,

constituted an imminent and substantial endangerment to human health, welfare, or the

environment. EPA issued an Action Memorandum selecting a time-critical removal action at the

Site be conducted to address the contamination.

23.     On March 17, 2016, EPA and the Defendant entered into an Administrative

Settlement Agreement and Order on Consent (the "ASAOC"), requiring the Defendant to

conduct the work required in the October 15, 2015, Action Memorandum. Under this ASAOC,

the Defendant agreed to, among other tasks, sample properties within the Site to determine if coal

ash was present and whether coal-ash derived contaminants presents unacceptable exposure risks

and, if so, to remove the contaminated soil, dispose of it properly off-site, and restore the

property using clean fill materials.

24.     Since March 17, 2016, Defendant has been conducting work at the Site in

accordance with the ASAOC under EPA oversight.

25.     Following Defendant's completion of a feasibility study, and a public

participation process, on September 30, 2016, EPA executed a Record of Decision ("ROD"),

selecting a remedial action for the Site. The ROD requires, among other things, that the removal

work agreed to in the ASAOC be incorporated into the Site cleanup plan.

26.     The soil component of the OU 2 portion of the remedial action at the Site is a

continuation of the process established under the ASAOC and consists of: (1) identifying

contamination above cleanup levels from deposits of coal ash; (2) excavating and disposing of

contaminated soil off-site; (3) restoring excavated properties using clean backfill; and (4) implementing institutional controls to prevent exposure to soil contamination left at depth. The groundwater, surface water, and sediment monitoring component of OU 2 consists of monitoring residential drinking water wells, groundwater monitoring wells, surface water, and sediments to ensure that ecological habitats continue to not be adversely affected by Site contamination.

## GENERAL ALLEGATIONS

27.     Prior to 1998, Defendant arranged for disposal of hazardous substances and/or arranged with a transporter for transport for disposal of coal ash from its Michigan City, Indiana, power generation plant at the Site, including Yard 520, which is in OU 1. Defendant also arranged for disposal of hazardous substances and/or arranged with a transporter for transport for disposal of coal ash at numerous properties as landscaping fill in the Town of Pines and its vicinity, within OU 2.

28.     The coal ash disposed of at OU 2 includes "hazardous substances," within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and Ind. Code §13-11-2-98, including boron, molybdenum, arsenic, thallium, and lead.

29.     At times relevant to this action, there have been "releases" or threats of "releases," within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a), and Ind. Code § 13-11-2-184, of hazardous substances into the environment at and from OU 2 at the Site.

30.     The United States and the State have taken "response actions," within the meaning of Section 101(25), 42 U.S.C. § 9601(25), at OU 2, including but not limited to providing oversight in the field and managing contractor personnel. The United States and the State continue to take response actions in connection with OU 2 and have incurred costs that are

not inconsistent with the National Contingency Plan, 40 C.F.R Part 300, as promulgated under

Section 105(a) of CERCLA, 42 U.S.C § 9605(a).

## FIRST CLAIM FOR RELIEF

(Reimbursement of Response Costs under Section 107(a) of CERCLA and
Ind. Code § 13-25-4-8(a))

31.     The allegations set forth in paragraphs 1-30 are realleged and incorporated herein

by reference.

32.     At times relevant to this action, there have been "releases" or threats of "releases,"

within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22) and

9607(a), and Ind. Code § 13-11-2-184, of hazardous substances into the environment at and from

OU 2 at the Site.

33.     By generating CCRs containing hazardous substances at its Michigan City power

plant and arranging for the transport of the CCRs for disposal at OU 2, Defendant is a person

who "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a

transporter for transport for disposal or treatment, of hazardous substances" at OU2 of the Site

within the meaning of Section 107(a)(3) and (4) of CERCLA, 42 U.S.C. § 9607(a)(3).

34.     The United States and the State have undertaken removal and/or remedial actions

at the Site and have incurred costs that are not inconsistent with the National Contingency Plan,

40 C.F.R Part 300, as promulgated under Section 105(a) of CERCLA, 42 U.S.C § 9605(a).

35.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C § 9607(a), and Ind. Code § 13-

25-4-8(a), the Defendant is liable to the United States and the State for all response costs that the

United States and the State have incurred with respect to the Site and will incur with respect to

OU 2, including interest at the rate that is specified for interest on investments of the Hazardous

Substances Superfund established under subchapter of Chapter 98 of Title 26 of the United States Code.

## SECOND CLAIM FOR RELIEF

(Injunctive Relief under Section 106(a) of CERCLA and Ind. Code § 13-25-4-9)

36.     The allegations set forth in paragraphs 1-30 are realleged and incorporated herein by reference.

37.     The Director of the Superfund Division of EPA Region 5 has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release or threatened release of hazardous substances, including boron, molybdenum arsenic, thallium, and lead, at and from the Site, including the geographical areas of OU 2.

38.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the United States to bring an action to secure such relief as may be necessary to abate a danger or threat at OU 2.

39.     Indiana Code § 13-25-4-9 authorizes the State to bring an action to compel a responsible person to undertake a removal or remedial action with respect to a release or threatened release of a hazardous substance from a facility or site in Indiana.

40.     EPA selected a remedy in the ROD to abate the dangers and/or threats caused by the hazardous substances at the Site, including the geographical areas of OU 2.

41.     Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), and Ind. Code § 13-25-4-9, the Defendant is liable to perform the remedies identified in the ROD for OU 2 which are necessary to abate the endangerment to the public health or welfare or the environment at the Site, including the geographical areas of OU 2.

## THIRD CLAIM FOR RELIEF

(Declaratory Judgment under Section 113(g) of CERCLA and Ind. Code § 13-25-4-8(a))

42.     The allegations set forth in paragraphs 1-30 are realleged and incorporated herein by reference.

43.     CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), specifies that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recovery further response costs . . . ."

44.     The United States and the State will continue to incur response costs associated with OU 2 at the Site, including oversight and enforcement costs that are recoverable as response costs under CERCLA.

45.     The United States and the State are entitled to entry of a declaratory judgment that the Defendant is jointly and severally liable to the United States and the State for future response costs incurred by the United States and the State in connection with OU 2 at the Site, to the extent that such costs are incurred in a manner not inconsistent with the National Contingency Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

A.      Order the Defendant to perform the remedial actions for the remedies selected in the OU 2 portion of the ROD for the Site pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.

B.      Enter judgment in favor of the United States and the State, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and Ind. Code §§ 13-25-4-10 and § 13-25-4-8(a), holding the Defendant jointly and severally liable for all unreimbursed response costs incurred by the United States and the State in connection with the Site, including enforcement costs and prejudgment interest;

C.      Pursuant to Section 113(g)(2) of CERCLA, and Ind. Code § 13-25-4-8(a), enter a declaratory judgment of joint and several liability in favor of the United States and the State and against the Defendant that will be binding on any subsequent action or actions to recover further response costs or damages in connection with OU 2 at the Site;

D.      Award the United States and the State for their costs and fees in this action; and

E.      Award such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division


   s/Steven D. Ellis
STEVEN D. ELLIS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone Number: (202) 514-3163
Email: steven.ellis@usdoj.gov

OF COUNSEL:
TAMARA CARNOVSKY
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL  60604

FOR THE STATE OF INDIANA:


  *s/*Patricia Orloff Erdmann (with permission)
PATRICIA ORLOFF ERDMANN
Chief Counsel for Litigation
OFFICE OF ATTORNEY GENERAL TODD ROKITA
302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204
p: 317.232.6318 │f: 317.232.7979
patricia.erdmann@atg.in.gov



  s/Meredith McCutheon (with permission)
MEREDITH McCUTCHEON
Deputy Attorney General
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South-5th Floor
302 West Washington Street
Indianapolis, IN 46204
Phone: (317) 233-9357
Fax:    (317) 232-7979
E-mail: Meredith.McCutcheon@atg.in.gov